ROBINSON v. PIEDMONT MARBLE CO.

(Circuit Court, N. D. Georgia. May 19, 1896.)

1. MORTGAGE—DUPLICATE INSTRUMENTS.

A mortgage was executed by one II., as agent for a corporation, but not under its corporate seal. A question as to the validity of the mortgage and of the authority of the agent having arisen, another mortgage was executed, two months later, by the officers of the corporation, which was substantially the same as the one first executed. There were no inter-vening equities. *Held,* that the two mortgages were properly foreclosed as one, under a bill seeking foreclosure of the second.

2. SAME—COMPUTATION OF AMOUNT DUE.

Where, in calculating the amount due to a mortgagee, for which he is entitled to foreclose his mortgage, given to secure advances, against which the mortgagor is entitled to offset the amount due to him under a con-tract for furnishing material to the mortgagee, a deduction is made from the contract price of such material of sums lawfully paid by the mort-gagee under the terms of the contract, to complete its performance after the mortgagor's default, such deduction does not extend the mortgage to include items not covered by it, but only reduces the offsets against the sums secured to the proper amount.

Brandon & Arkwright, for complainant.
Harrison & Peeples and Arnold & Arnold, for defendant.

NEWMAN, District Judge. Since the argument, and since coun-sel have furnished me with their briefs, I have carefully considered this case. It is unnecessary that I should make any detailed state-ment of the facts, because the same are fully and sufficiently stated in the report of the special master.

The first question for consideration, as made by the exceptions and argument, is the action of the master in allowing the two amendments—first, as to the membership of the firm of Robinson & Wallace; and, secondly, increasing the amount for which the foreclosure is asked. I think in both respects the master is right in allowing the amendments. The order of reference authorized the master to pass on pleadings and amendments that might be of-fered. This order, as I recollect it, was really taken by consent, but, if not, there was certainly no objection to the same, and the master acted under it, and properly so. Being thus authorized, I am of opinion that he was correct in allowing the amendments.

It is next urged that the special master erred in treating the two mortgages as one, and in reporting in favor of a foreclosure of the two instruments as one mortgage. A mortgage was exe-cuted in June, 1894, by Z. D. Harrison, as the agent for the defend-ant corporation, but not under its corporate seal. Some question seems subsequently to have arisen as to the validity of this mort-gage, and as to the authority of Harrison to execute the same, so that the officers of the defendant company, in August, 1894, exe-cuted another mortgage, which was substantially the same as the one executed by Harrison in June. There were slight differences in the two, but these differences were not considered material by the master, and are not so considered by me. The bill sought to foreclose the last mortgage. The execution of the first mortgage

was referred to in the body of the second, and the purpose for which the second and last mortgage was given. Both mortgages were introduced in evidence without objection, and the master decided, as stated, to treat the two as one mortgage; it being, as he states, immaterial whether the lien relied on by complainant was that of June or of August, as there were no intervening equities. As I understand the position of the defendant, it is that the last mortgage was ineffective, because the first mortgage was valid and binding on, the company, and that this first mortgage should have been foreclosed, and not the second. The court is unable to see the force of this position, and agrees fully with the special master in the conclusion that the two instruments should be treated as one mortgage, and foreclosed together.

The next contention for the defendant is that these mortgages do not, by their terms, cover some of the items which the master has found against them, and which he reports as part of the amount for which the foreclosure of the mortgage should be granted. If the special master has adopted the proper method of arriving at the amount due the complainant, then this question would not arise, and it would be unnecessary to decide it. The amount referred to was the $54,950.83 paid to Norcross for marble, and $63,077 paid to Simmons after he came into possession of the quarries. By his calculation, the master deducts these two amounts from the amount which the defendant company was to receive for full performance of its contract. Having thus reached the amount which was due the defendant for its part .performance, he then deducts that from the total amount of the money advanced to it, leaving, as a remainder, $193,875.68, reported in favor of the complainants. The small items added or deducted are immaterial, because no complaint is made on either side with reference to these. There seems to be no question about the fact that the defendant was considerably behind with the work of furnishing marble for the building under contract, and that the trustee of the hospital building had the right, under the terms of the contract, to make other arrangements for material, and to deduct the cost of the same from the amount which, by the contract, was to be paid to the defendant company.

The provision of the contract on this subject, is as follows:

"It is further agreed that, if the said, the Piedmont Marble Company of Georgia, shall get behind in their portion of the job so far as to prejudice the probability of said Robinson & Wallace being able to finish at the time or times designated in their contract, or if they shall furnish defective materials, or do bad work, it shall be lawful for the said Robinson & Wallace, at their option, either to put on such men and supply such materials and additional machinery, tools, and appliances as shall be needed, and at the expense of said company, or to cancel the unperformed portion of this contract, and to proceed to finish the same by other parties."

The evidence shows, not only that the marble company was behind with its work, but it really shows acquiescence on the part. of its general manager, Malone, with the action of the trustees in purchasing from Norcross the marble procured from him; and the evidence further shows that, as to the Simmons item, the defendant company had lost possession of its quarries, and Simmons had gone

into possession as successor to the Cornell estate, which took possession of the quarries for default in the payment of the purchase money, and under the terms of the contract between Cornell and the Piedmont Marble Company. The master found that Robinson & Wallace were justified in their action as to both of these matters, both with Norcross and Simmons, and so, to reach the amount really due the defendants for the work done, he deducted from the total amount of the contract the amount paid these parties for material. This being true, there is no foreclosure for the amount paid by Robinson & Wallace to Norcross and Simmons, but the foreclosure is for the difference between the amount due the defendant for its part performance of the contract and the amount of the advances to it by Robinson & Wallace.

It is next insisted that the master did not have sufficient proof of the correctness of the advances made by complainants to defendant. He had the evidence of the bookkeeper for complainant, testifying positively to each item of the amount advanced, and the various items arranged in the most careful manner for examination. He had also before him the books kept by the company, the defendant, at its works in Georgia. He therefore had evidence from both ends of the line,—from the office in New York from which the advances were made, and from the receiving office at Marble Hill. This certainly should be considered sufficient evidence of the correctness of an account such as this, and especially will it be considered when no item is pointed out as erroneous.

It is contended for the defendant that the facts show that the complainant desired to become the owner of the marble works, and that the whole business was conducted with a view to this result. The special master says on this subject:

"As to the claims of the respondent that the complainant coveted its property, and had made one or more efforts with that end in view of acquiring it. I do not find that complainant has made such efforts, or has had such desire, further than to collect from the respondent what he thought was due him. At all events. I do not think that it could destroy complainant's right to the collection of the debt permitted to him by law."

Whatever may have been the wish of the complainant in this respect, there is no evidence in the record sufficient to defeat or to reduce his claim. Complainant unquestionably advanced to the defendant the amount claimed, and, as I have already stated, the master was justified in finding that the contract was only fulfilled to the extent reported. So the simple question here is: Shall the mortgage be foreclosed for the amount thus due complainant? Clearly so, it appears to me.

There are other minor questions made by the exceptions and in the argument, but what has been already stated covers the main contentions and those which must control the case. The exceptions will be overruled, and judgment for foreclosure rendered.